CARLTON (BUCKLEY v.). See Case No. 2,093.

CARLTON (McGINNIS v.). See Case No. 8,799.

CARLTON (UNITED STATES v.). See Case No. 14,725.

---

## Case No. 2,415a.

CARLWITZ v. GERMANIA FIRE INS CO.

[12 Ins. Law J. 127.]

Circuit Court, D. New Jersey. 1883.

INSURANCE — SPECIFIC PROPERTY AND AMOUNTS— WILLFUL BURNING — BURDEN AND MEASURE OF PROOF—WAIVER OF PROOF OF LOSS.

[1. Where insurance is effected in specific amounts, on specific kinds of property. the insured is only entitled to indemnity out of the particular fund intended to indemnify the particular property.]

[2. The burden of proof lies with an insurer, who defends on the ground of a willful burning, to establish the defense by the same degree of proof as is required in other civil cases. He is not required to establish the offense charged beyond a reasonable doubt.]

[See note to Case No. 773.]

[3. Where an insurer refuses to pay a loss on the ground that the policy has been canceled, the necessity of giving proof of loss according to the terms of the policy is dispensed with.]

[At law. Action upon a fire insurance policy. The court charged the jury as follows:]

Mr. Leonard, for plaintiff.
Mr. Chetman, for defendant.

NIXON, District Judge. This is an action on a policy of fire insurance, brought to recover the damages alleged to have been sustained by the plaintiff on account of a fire, which occurred in her grocery store on the morning of Oct. 31, 1880. The policy is dated on the 24th of March, 1880, and recites that, in consideration of ten dollars, the defendant company had insured the plaintiff for the amount of two thousand dollars against loss by fire for the period of one year from the date. The following facts seem to be uncontroverted: Early in the spring of 1880 the husband of the plaintiff rented of the owner a grocery store at the corner of First street and Madison, in the city of Hoboken. In addition to the storehouse, he also rented rooms in the story above for the occupancy of his family, consisting of the plaintiff and one child. In March of the same year, after the grocery store was opened, the husband and the bookkeeper of the defendant company, at its branch office in Hoboken, who was paid for soliciting policies, entered into negotiations in regard to an insurance upon the store goods, store fixtures, and the household furniture on the floor above. The terms of the policy were agreed upon, to wit, fifty cents on the one hundred dollars. It was drawn up, signed, countersigned, executed by the company and delivered to the husband on the 24th of March, 1880. He was acting as the agent of his wife, who is alleged to have been the owner of the property. The policy was issued for two thousand dollars, as follows: $1,200 on the stock of groceries in the store, $300 on the store fixtures and furniture, and $500 on the household furniture, wearing apparel and family stores. Where insurances are thus effected in specific amounts on specific kinds of property, the insured, in case of loss, can only look for indemnity to the particular fund which was intended to indemnify the particular property. Thus, I have heard of no proof of loss of household furniture, and hence the $500, which was taken to insure against loss thereon, may be dismissed from your minds in considering your verdict. The evidence also in regard to the loss from the injury to the store fixtures, embracing the counters and shelving, was very vague and unsatisfactory, but I shall refer to that further on, when I come to the question of damages.

To aid you, gentlemen, in making up your verdict, I will now briefly allude to four questions which the case presents for your consideration: The first one has reference to the origin of the fire; the second to the alleged cancellation of the policy by the company; the third to the need and the sufficiency of the proof of loss; and the fourth to the evidence in regard to the damages.

1. What was the origin of the fire? It has not been distinctly charged, but it was half suggested, that there was fraud in its origin. If any fraud existed, which can be traced to the plaintiff, she is not entitled to recover. You heard the testimony of the police officer who first observed the fire. The facts stated by him were of a character to give rise to grave suspicions; but suspicions are not sufficient. The burden of proof here is upon the defendant corporation, and it must submit to you evidence sufficient to convince you that the plaintiff had knowledge, directly or indirectly, of a willful attempt to burn the property. I do not say that you must be satisfied of this beyond a reasonable doubt, because the old doctrine has been exploded that it requires the same measure of proof, in a civil suit, to warrant the jury in finding that the party willfully burnt his property to defraud the insurance company as it did to convict on an indictment charging that offense. It is now considered a question of preponderating proof. On which side is the weight of evidence? Unless clearly against the plaintiff, it is your duty to find that the fire was accidental or its origin unknown.

2. The next question is whether the company had a right on the 24th of September, 1880, to cancel the policy? The defendant claims the right to cancel, on the ground that the annual premium due for the insurance was ten dollars; that the insured paid five dollars, and upon repeated applications rejected or refused to pay more; that he was formally notified that the company would cancel the policy at the end of six months unless the residue of the premium was paid, and that it was, in fact, canceled on the books of the company in the month of September before the fire. The testimony on this point is very conflicting. Carlwitz, the husband of the plaintiff, on the other hand, states that, whilst he was making inquiries in regard to placing an insurance upon the property, he was approached by a Mr. Niewman, the bookkeeper of the branch office of the defendant company at Hoboken, and who was in the habit, in addition to his other business, of soliciting policies for the company, and that after some negotiations, the agent agreed to issue a policy for one year in the sum of two thousand dollars for the premium of ten dollars—one half of which might be paid in cash and the remaining half in groceries from the plaintiff's store; that he paid the cash when the policy was issued, and received a receipt for $10 in full for the premium, with the understanding that he should fill an order for groceries for the value of five dollars whenever requested; that he had unfortunately lost the receipt, but that he had been willing at all times, and had frequently offered, to supply the groceries according to the contract. This statement is

denied by the witnesses of the defendant, and their denial, to some extent at least, seems to be corroborated by circumstances. It is for you to determine where the truth lies, and your verdict must be controlled by the result of your deliberations. If you believe the husband of the plaintiff, then no forfeiture or cancellation of the policy was permissible, because . the plaintiff complied with her agreement respecting the payment of the premium. But, if you rather give credence to the testimony of the witnesses for the defendant upon this point, the policy was lawfully canceled on account of the non-payment of the premium, and you must render a verdict for the defendant.

3. If you find that the policy was unlawfully canceled, you will next inquire into the sufficiency of the proof of loss. The policy requires certain formal proofs to be made by the insured after a fire, before the insurer can be called upon to pay the loss. The defendant presents these proofs here, and says they are insufficient. But, under the facts shown in the case, it is not a material question whether such proofs were offered in proper form or not. The defendant is estopped from raising the question here, inasmuch as it was not suggested before the suit was brought. The undisputed evidence is that the agent of the company, on the morning after the fire, when informed of it, refused to pay anything, upon the distinct ground that the policy had been canceled.

4. As to damages. If you hold that the defendant had no right to cancel the policy, you will then have to consider the question. what sum has the plaintiff proved to you that she ought to have for the loss which she has sustained? The burden of proof here is upon her. The amount of the insurance was $300 on the store fixtures and $1,200 on the stock of groceries. These are the maximum sums that can be awarded, however far beyond them the actual loss extended. And you can only give the amount of loss shown to your satisfaction. I have never known a case of this kind tried where the proof as to the extent of the fire and the real damage done has been left in such an unsatisfactory state. The jury cannot guess at damages. There must be evidence to enable you to form a judgment. The plaintiff, knowing very little about the stock on hand or its value, she relies solely upon the testimony of her husband. You heard his statement, and must base your verdict upon your view of its character, scope and meaning.

In this controversy, gentlemen, the plaintiff is a woman and the defendant a corporation. It is difficult for a jury not to be misled by their prejudice in such a case. Jurors are men, and have a chivalric feeling for the gentler sex. They are also apt to have more or less prejudice against corporations. The court room is no place for any such feeling. Corporations are entitled to the same justice, and to the same application of the principles of the law, as individual citizens. Indeed, a corporation is only a modern contrivance, wherein a number of persons unite their capital together for business purposes, and in all controversies respecting their rights the same law must be administered as if the stockholders, as men, were endeavoring to secure their personal rights. You will therefore look at the case impartially, and render the verdict which you would render if the issue was between man and man. This is no place for sympathy. Courts are organized and juries are summoned to mete out equal and exact justice to all, and where they fail to do this they come short of fulfilling the chief object of their organization.

Verdict for plaintiff in the sum of $400.